**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES FERRARO, | CASE NO. 3:13-cv-2590-YK-GBC |
| Plaintiff, | (JUDGE KANE) |
| v. | (MAGISTRATE JUDGE COHN) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| Defendant. | Docs. 1, 11, 12, 15, 17 |

## REPORT AND RECOMMENDATION

### I.    Procedural Background

On October 27, 2009, James Ferraro ("Plaintiff") protectively filed an application as a claimant for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, with an alleged disability onset of May 1, 2008.[1]   (Administrative Transcript, hereinafter, "Tr." at 9 (Doc. 11)).   On

---

[1] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  The last date that a claimant meets the requirements of being insured is commonly referred to as the "date

October 19, 2010, Plaintiff's claim was denied at the initial level of administrative review.   (Tr. 135-138).   At Plaintiff's request, on March 16, 2012, an administrative law judge ("ALJ") held a hearing at which Plaintiff, who was represented by an attorney, and a vocational expert appeared and testified.   (Tr. 10).   On May 24, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits.   (Tr. 7-19).   On July 5, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 5-6), which the Appeals Council denied on August 20, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner.   (Tr. 1-4).

On October 18, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the Commissioner of the Social Security Administration denying social security benefits.   Doc. 1.   On January 16, 2014, the Commissioner ("Defendant") filed an answer and an administrative transcript of proceedings.   Doc. 10, 11.   On February 27, 2014, Plaintiff filed a brief in support of the appeal ("Pl. Brief").   Doc. 12.   On

---

last insured."   It is undisputed that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009.   (Tr. 12).

April 10, 2014, Defendant filed a brief in response ("Def. Brief").  Doc. 15.  On November 5, 2014, the Court referred this case to the undersigned Magistrate Judge.  On November 17, 2014, Plaintiff filed a letter notifying the Court that a reply brief would not be filed.  Doc. 17.

## II. Relevant Facts in the Record

Plaintiff was born on August 23, 1955, and thus was 52-years-old on the alleged disability onset date and 54-years-old when he was last insured for benefits.  (Tr. 12).  He completed high school (Tr. 194), and previously worked as sanitation worker, mail sorter and mobile caterer.  (Tr. 15-16, 96-98).  Between 1989 and 1991, Plaintiff sustained an elbow fracture and subsequently was recommended a "disability retirement" from his job as a sanitation worker.  (Tr. 75, 269, 318).  In January 2008 Plaintiff sustained a shoulder injury.  (Tr. 229-228).  Plaintiff alleges disability due to a combination of impairments including avascular necrosis of the shoulder and an elbow impairment.  (Tr. 12, 14, 75, 96).  The ALJ found that Plaintiff last met the insured requirements of the Act on December 31, 2009.  (Tr. 12).

**A. Relevant Treatment History and Medical Opinions**

**1.  NYC Employee Retirement System – Medical Board Examination and Report, November 21, 1991**

A November 1991 Medical Board report recommended a "disability retirement" due to an injury to the right elbow that Plaintiff reported in an application filed September 13, 1991.  (Tr. 318).   In the interview for the November 1991 report, Plaintiff stated that he suffered an elbow injury which resulted in immediate swelling.  (Tr. 318).  Following the injury, Plaintiff sought emergency care at a hospital, had x-rays taken, and it was determined that Plaintiff had a "nondisplaced fracture of the radial head with a chipped fracture of this portion of the radius" with associated soft tissue swelling.  (Tr. 318).  Plaintiff was treated with a cast by orthopedist Dr. Yussef.  (Tr. 318).   Plaintiff reported continued pain and swelling after the cast was removed and was told that he needed surgery. (Tr. 318).  The November 1991 report referenced medical records from Dr. Harvey Grable dated July 31, 1991; and August 12, 1991, wherein Dr. Grable opined that Plaintiff sustained a fracture involving the larger part of the radial head of the right elbow.   According to Dr. Grable, the prognosis for

Plaintiff's regaining full use of the right elbow was poor since an excision of the radial head had not been done within the proper timeframe. (Tr. 318). Dr. Grable stated that Plaintiff lost a complete range of motion for the right elbow with 30 degrees lack of extension and 30 degrees lack of supination. (Tr. 318). Dr. Grable added that Plaintiff's flexion and pronation were normal and surgery would only marginally improve Plaintiff's condition and would unlikely result in Plaintiff regaining full use of the right elbow. (Tr. 318). Dr. Grable further opined that it would be unlikely that Plaintiff would be able to return to his regular duties in his sanitation work. (Tr. 318). In the November 1991 report, Plaintiff complained of pain, swelling and limitation of motion of the right elbow. (Tr. 318). Upon examination, the right elbow did not show any swelling, and had complete supination with a normal range of pronation. (Tr. 318). During the November 1991 examination, it was further noted that Plaintiff lacked thirty degrees of full flexion and thirty degrees of extension of the elbow. (Tr. 318). The Medical Board also noted that Plaintiff had slightly less gripping power on the right than the left. (Tr. 319).

**2.  Natale Falanga, M.D., Treating Physician – Records, June 14, 1993, to**

**December 20, 2010**

Dr. Falanga has treated Plaintiff from 1993 to 2010.  (Tr. 224-256, 273-284).
In a treatment record dated June 28, 1994, it was noted that Plaintiff's right arm
appeared to be three to four centimeters shorter than the left arm and had a
decreased range of motion.  (Tr. 240).  In a treatment record dated June 24, 1999,
Plaintiff reported having slammed his finger in a car door and Dr. Falanga
examined the left thumb and index finger and noted swelling.  (Tr. 246).  In a
treatment record dated January 13, 2008, Dr. Falanga noted that there was a history
of a fall and Plaintiff reported shoulder pain.  (Tr. 247, 291, 309, 311).  Upon
evaluation, Dr. Falanga noted no evidence of fracture or dislocation of the right
shoulder, a "band-like area of sclerosis involving the humeral head," and
concluded that such observations were suggestive of avascular necrosis.  (Tr. 247).
Dr. Falanga also noted areas of periosteal reaction involving the very lateral aspect
of the scapula, most prominently near the glenoid, as well as acromioclavicular
join degenerative changes.  (Tr. 247, 291).  On January 11, 2008, Plaintiff reported
falling on his shoulder that morning, and that the shoulder hurt upon movement

with a level of pain similar to a 'tooth ache.' (Tr. 229-228). Dr. Falanga observed that the right shoulder was tender to any movement and planned for x-rays of the right shoulder. (Tr. 228). On January 18, 2008, Plaintiff returned for treatment of his right shoulder pain. (Tr. 227). Dr. Falanga noted crepitus of the left shoulder and minimal crepitus of the right shoulder. (Tr. 227). Although Dr. Falanga found no evidence of fracture; there was a suggestion of avascular necrosis of the right humeral head. (Tr. 227). Plaintiff reported that his right shoulder felt better since the previous visit and Dr. Falanga referred Plaintiff for an MRI of the right shoulder and humeral head. (Tr. 227). A handwritten note dated December 10, 2009, indicated that the office was trying to set up an MRI, and another note dated February 4, 2010, stated that the MRI of the shoulder was denied. (Tr. 226).

### 3.  Pocono Medical Center, James J, Gallagher, M.D., Radiologist – Records, January 13, 2008

In a treatment record dated January 13, 2008, Radiologist Dr. Gallagher noted that Plaintiff's right shoulder did not demonstrate any evidence of a fracture or dislocation. (Tr. 247, 291, 309, 311). Dr. Gallagher observed that there was a band-like area of sclerosis involving the humeral head which was suggestive of

avascular necrosis.  (Tr. 247, 291, 309, 311).  Dr. Gallagher also noted areas of periosteal reaction involving the very lateral aspect of the scapula which was most prominent near the glenoid and observed acromioclavicular joint degenerative changes.  (Tr. 247, 291, 309, 311).

### 4.  Gregory J. Menio, M.D., Treating Physician – Records, March 19, 2010, to May 31, 2011

In a consultative letter to Dr. Falanga dated March 19, 2010, Dr. Menio noted a history of right shoulder pain since January 2008.  (Tr. 244, 275, 302, 304).  Plaintiff reported that the shoulder pain increased with activity and improved with rest.  (Tr. 244, 275, 302, 304).  Dr. Menio noted x-rays of Plaintiff's shoulder which "raise the question of avascular necrosis" and noted a history of hypertension, diabetes, and arthritis.  (Tr. 244, 275, 302, 304).  Upon examination, Dr. Menio further observed that Plaintiff's right shoulder had full range of motion, 5/5 strength, no instability or tenderness, and no supraspinatus weakness.  (Tr. 244, 275, 302, 304).  Dr. Menio further reported that he took two x-rays of Plaintiff's shoulder and concluded that the x-rays revealed calcific tendonitis and no significant evidence of avascular necrosis, however, the ultimate assessment

concluded "possible avascular necrosis."  (Tr. 244, 275, 302, 304).

In a consultative letter to Dr. Falanga dated January 28, 2011, Dr. Menio noted that Plaintiff primarily complained of anterior pain which worsened with activity and improved with rest.  (Tr. 299, 303).  Dr. Menio reported that upon evaluation, Plaintiff's shoulder was without redness or erythema, and that Plaintiff showed some tenderness over the bicipital groove and anterior aspect of the shoulder with no acromioclavicular joint tenderness.  (Tr. 299, 303).  Dr. Menio concluded that Plaintiff had tendonitis of the right shoulder biceps and a possible subscapular tear.  (Tr. 299).  After discussing treatment options, Plaintiff indicated that he wanted to commence a physical therapy program.  (Tr. 299).

### 5.  Kurt Maas, M.D. – Physical Residual Functional Capacity ("RFC")

### Assessment, October 7, 2010

In the October 2010 assessment, Dr. Maas checked boxes indicating that Plaintiff could occasionally lift fifty pounds, frequently lift 25 pounds, and sit, stand and/or walk (with normal breaks) for six hours in an eight hour work day.  (Tr. 264).  Dr. Maas further indicated that Plaintiff had an unlimited ability to push and/or pull.  (Tr. 264).  Dr. Maas also indicated that Plaintiff had an unlimited

ability of fine and gross motor manipulation to include handling, fingering, and feeling; while having a limited ability of reaching in all directions, including overhead. (Tr. 265). Dr. Maas noted that his assessment did not include treating or examining source statements regarding Plaintiff's physical capabilities. (Tr. 267).

In support of his findings, Dr. Maas summarized Plaintiff's reported limitations in standing, walking, lifting, carrying, sitting, kneeling, reaching and completing daily activities as a result from necrosis in the right shoulder, diabetes, high blood pressure, high cholesterol, and pain. (Tr. 268). Dr. Maas concluded that the evidence established a medically determinable impairment of "right shoulder tendonitis" rather than necrosis. (Tr. 268). As support for his conclusion, Dr. Maas cited March 2010 treating physician notes that Plaintiff could ambulate normally with normal sensation, had full range of motion in his right shoulder, with normal strength, and without instability or tenderness. (Tr. 268). Dr. Maas also determined that the x-rays showed calcific tendonitis and no significant evidence of avascular necrosis. (Tr. 268).

In the October 2010 assessment, Dr. Maas found Plaintiff's statements

regarding the symptoms and limiting effects of the symptoms to be "partially credible" based on reviewing Plaintiff's activities of daily living, review of medical records, and observations.   (Tr. 268).   Dr. Maas noted that although Plaintiff alleged performing few, if any, household chores, the overall evidence suggested that he had the ability to care for himself, drive a car, and maintain his home. (Tr. 268).  Dr. Maas noted that the medical treatment record reveals that the treatment had generally been successful in controlling Plaintiff's symptoms, that Plaintiff did not attend physical therapy, and did not require an assistive device to ambulate.   (Tr. 268).   Dr. Maas also noted that Plaintiff's medications had been relatively effective in controlling his symptoms and Plaintiff did not allege any side effects from the use of prescribed medication.  (Tr. 268).

### 6.  St. Luke's Pocono MRI – Radiology Report, December 16, 2010

A report dated December 16, 2010, indicated that MR images were taken of the right shoulder including "localizer, axial T2 fat-sat, coronal TI/T2 fat-sat, sagittal T2 fat sat on a[n] open MR unit."  (Tr. 278, 314, *see also* 301).  It was noted that the image quality was degraded by patient motion and there was not significant subacromial spur identified.  (Tr. 278, *see also* 301).  It was further

noted that there was:

> diffuse supraspinatus and infraspinatus tendinosis identified with a full thickness tear noted involving the junction of the supraspinatus and infraspinatus tendons measuring up to 12 mm in the AP dimension with 6 mm of tendon retraction. Subscapularis tendinosis is also identified with a full thickness complete tear involving the superior bundle at its lesser tuberosity insertion without significant tendon retraction. Remaining muscles and tendons of the rotator cuff appear intact without evidence of fatty muscular atrophy.
>
> Biceps tenosynovitis is seen within the bicipital groove. The biceps tendon also appears subluxed having a perched appearance of the lesser tuberosity with proximal tendinosis but no evidence of tear.

(Tr. 278, *see also* 301).  The report further noted the inability to assess the glenoid labrum due to poor image quality of the MRI.  (Tr. 278, *see also* 301).  The report observed that the acromioclavicular and glenohumeral joints appeared intact with no evidence of fracture.  (Tr. 278-279, *see also* 301).

### III.    Legal Standards and Review of ALJ Decision

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. §

1382c(a)(3)(A).  A claimant for disability benefits must show that he or she has a

physical or mental impairment of such a severity that:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a

person is eligible for disability benefits.  20 C.F.R. § 404.1520; *accord Plummer*,

186 F.3d at 428.  If the Commissioner finds that a Plaintiff is disabled or not

disabled at any point in the sequence, review does not proceed.  20 C.F.R. §

404.1520(a)(4).  The Commissioner must sequentially determine: (1) whether the

claimant is engaged in substantial gainful activity; (2) whether the claimant has a

severe impairment; (3) whether the claimant's impairment meets or equals a listed

impairment; (4) whether the claimant's impairment prevents the claimant from

doing past relevant work; and (5) whether the claimant's impairment prevents the

claimant from doing any other work.   20 C.F.R. §§ 404.1520, 416.920.   Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").   20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof.   The claimant bears the burden of proof at steps one through four.   *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).   If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.   *Id.*   The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff.   *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the Commissioner's decision denying a claim for disability benefits, the Court must uphold the findings of the Commissioner so long as those findings are supported by substantial evidence.   *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).   Substantial evidence is a deferential standard of review.   *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).   Substantial evidence "does not mean

a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence requires only 'more than a mere scintilla' of evidence, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)), and may be less than a preponderance.  *Jones*, 364 F.3d at 503.  If a reasonable mind might accept the relevant evidence as adequate to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial evidence.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson*, 529 F.3d at 200.

## A.      Waiver of Issues

It is unclear whether Plaintiff requests the Court to engage in an overarching review to determine whether the ALJ's decision is supported by substantial evidence.  (Pl. Brief at 5).  Plaintiff merely stated in a heading that the question presented is "Whether the substantial evidence of record supports the ALJ's decision? Suggested Answer: In the Affirmative."  (Pl. Brief at 5).  Then Plaintiff

provided the legal standard of review for ALJ decisions without any explanation of specific errors.  (Pl. Brief at 5-6).  Local Rule 83.40.4(b) requires that in social security cases, a Plaintiff's brief "shall set forth . . . the specific errors committed at the administrative level which entitle plaintiff to relief."  M.D. Pa. Local Rule 83.40.1.  Local Rule 83.40.4(b) elaborates that "[a] general argument that the findings of the administrative law judge are not supported by substantial evidence is not sufficient."  *Id.*; *cf. Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008) (explaining that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a 'showing,' rather than a blanket assertion, of entitlement to relief and, as a threshold requirement, the plain statement of pleadings must possess enough heft to show that the pleader is entitled to relief).  Failure to adequately raise an issue results in its waiver.  *See Kiewit Eastern Co., Inc. v. L & R Construction Co., Inc.*, 44 F.3d 1194, 1203–04 (3d Cir.1995) (upholding a district court's finding that a party had waived an issue when a party only made vague references to the issue). Thus, the Court declines any invitation to mine the record to make Plaintiff's case. *Cf. Crawford v. Washington*, 541 U.S. 36, 68 (2004) (declining to "mine the record" in order to support party's case).

## B. ALJ's Determination of Plaintiff's Right Shoulder Impairment and Residual Functional Capacity

Plaintiff contends that the ALJ erred in determining that Plaintiff had the residual functional capacity to perform his past work as a mail sorter.[2] Pl. Brief at 6.

The ALJ, not the treating or examining physician, must make the disability and residual functional capacity determination. 20 C.F.R. § 404.1527(d)(1)-(2); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011). "The law is clear that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler*, 667 F.3d at 361; *Coleman v. Astrue*, 2012 WL 3835403, at *2 (3d Cir. Sept. 5, 2012) (holding that ALJ may choose non-examining physician opinion over treating physician opinion as long as medical evidence not rejected for wrong reason or no reason).

The weight afforded to any medical opinion is dependent on a variety of

---

[2] Plaintiff further asserts that because the ALJ stated that "he suffered same condition that the Plaintiff suffered from, namely a shoulder injury . . . . This experience evidently clouded the ALJ's perception . . . ." Pl Brief at 9. This contention is without merit. Plaintiff presented no evidence indicating any bias or misconduct on part of the ALJ, as would violate claimant's due process rights. *See Valenti v. Comm'r of Soc. Sec.*, 373 F. App'x 255, 258 (3d Cir. 2010).

factors, including the degree to which the opinion is supported by relevant evidence and consistent with the record as a whole.  20 C.F.R. § 404.1527(c)(3)-(4).   The opinions of specialists are generally given greater weight than non-specialists.  The consistency of medical opinions with the record is also significant. 20 C.F.R. §404.1527(c)(4)&(5).

An ALJ should give treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.  *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008).   An administrative law judge must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the administrative law judge's own credibility judgments, speculation or lay opinion.  *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985) (The ALJ may not substitute his own judgment for that of a physician).  The regulations require that the Commissioner "give good reasons in [the] notice of determination or decision" for the weight assigned to the treating source's opinion.  20 C.F.R. §

404.1527(d)(2); S.S.R. 96–2p, 1996 WL 374188, at *5.   The failure to provide "good reasons" for not crediting a treating source's opinion is a ground for remand. *See* 20 C.F.R. 404.1527(d)(2); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir.2001) (noting that failure to comply with 20 C.F.R. 404.1527(d)(2) warrants a remand).

However, a treating physician's opinion does not warrant controlling weight under the regulations unless it is well supported by clinical and laboratory diagnostic findings and consistent with other substantial evidence.   20 C.F.R. § 404.1527(c)(2); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).   If a treating source's opinion is not entitled to controlling weight, the factors outlined in 20 C.F.R. § 404.1527(c)(2) are used to determine the weight to give the opinion.   *Id.* The more a treating source presents medical signs and laboratory findings to support his medical opinion, the more weight it is entitled.   *Id.*   Likewise, the more consistent a treating physician's opinion is with the record as a whole, the more weight it should be afforded.   *Id.*

In the decision dated May 24, 2012, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR

404.1567(b) with the additional limitations that Plaintiff could not reach laterally or downward without bending his knees, and could only handle or grasp at desk level, and occasionally reach overhead.  (Tr. 13).

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his medically determinable conditions were inconsistent with the clinical and objective evidence in the record.  (Tr. 13).  The May 2012 decision summarized relevant evidence from the record in support of the ALJ's conclusions.  (Tr. 13-15).  Specifically, the ALJ noted that in January 2008, Dr. Falanga, reported that the Plaintiff's shoulder improved since a previous examination, and that Plaintiff had only minimal crepitus in the right shoulder.  (Tr. 14).  The ALJ noted that according to Dr. Gallagher, although Plaintiff suffered from avascular necrosis, degenerative changes, and sclerosis involving the humeral head; there was no evidence of a fracture or dislocation.  (Tr. 14).

The ALJ also considered medical records regarding Plaintiff's symptoms after December 31, 2009, the date Plaintiff was last insured.  (Tr. 13-14).  The ALJ considered an orthopedic consultation in March 2010, wherein Plaintiff reported that his shoulder symptoms improved with rest and worsened with activity, and

upon examination, Dr. Menio observed that Plaintiff suffered from calcific tendonitis, but there was no significant evidence of a vascular necrosis.  (Tr. 14). The ALJ also noted that Plaintiff had normal bilateral sensation, a full range of motion, 5/5 strength, and no instability or tenderness.  (Tr. 14).  The ALJ observed that in December 2010, an MRI of the Plaintiff's right shoulder revealed an intact acromioclavicular joint.  (Tr. 14).

Although Plaintiff reported that he was very limited in activities of daily living, the ALJ noted from Plaintiff's testimony that he cared for his mother, cared for personal needs with some shoulder limitations, prepared meals, lightly cleaned, drove, shopped, and handled personal finances.  (Tr. 14).  The ALJ also noted the absence of objective evidence of a severe shoulder condition.  (Tr. 14).  For example, there was no evidence of any significant disuse muscle atrophy of the extremities, which was indicative that Plaintiff moved on a fairly regular basis, contradicting Plaintiff allegations of totally debilitating symptoms.  (Tr. 14).

The ALJ also reviewed Plaintiff's history of treatment and prescribed medications highlighting that although Plaintiff was prescribed stronger pain medication of Hydrocodone and Vicodin, Plaintiff reported that he tried to take

only Tylenol during the day and not take pain medication if he could avoid it.  (Tr. 15).  The ALJ also observed that Plaintiff reported that he tried physical therapy, yet stopped because it was too painful.  (Tr. 15).  During the hearing, Plaintiff testified that when reaching, his pain was about a three to four out of ten.  (Tr. 15 (citing to TR 85)).  The ALJ also found that the lack of aggressive medical treatment, lack of frequent hospital visitation or emergency room care, and the lack of surgical intervention for his condition were inconsistent with a completely debilitating shoulder condition.  (Tr. 15).

Regarding the weight allocated to the medical opinions, the ALJ summarized the opinion provided by Dr. Maas, a non-examining State Agency consultant, and gave Dr. Maas' opinion partial weight, finding that Plaintiff was more limited than reflecting in Dr. Mass' opinion.  (Tr. 15).  The ALJ allotted partial weight to the opinion of Dr. Menio, an examining physician, finding that Plaintiff had greater limitation in the right shoulder.  (Tr. 15).

Ultimately, the ALJ concluded that Plaintiff was limited to light lifting, carrying, handling, and grasping.  (Tr. 15).  With consideration of Plaintiff's functional limitations and of the testimony from the Vocational Expert, the ALJ

determined that Plaintiff was capable of performing past relevant work as a mail sorter. (Tr. 15). Specifically, the ALJ found that Plaintiff was able to perform the past work as a mail sorter, not as the job was officially described, but as the job was "actually and generally performed." (Tr. 15-16).

Plaintiff mostly reiterates medical diagnoses and asserts that he had difficulty reaching out in front of him (citing to Tr. 95) and lifting anything close to twenty pounds with his right dominant extremity. Pl. Brief at 10. Ultimately, the outcome of the case depends on the demonstration of the functional limitations of the disease or impairment rather than the mere diagnosis of the disease or name of the impairment. *See Alexander v. Shalala*, 927 F. Supp. 785, 792 (D.N.J. 1995) *aff'd sub nom. Alexander v. Comm'r of Soc. Sec.*, 85 F.3d 611 (3d Cir. 1996); *accord*, *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006). In the hypothetical to the Vocational Expert, the ALJ did, in fact, consider and include Plaintiff's limitation of "carrying 20 pounds occasionally and ten pounds frequently" and "the dominant right arm, could not reach out laterally, to the side of his body, and could not reach down towards, without bending," (Tr. 98-99).

Although Plaintiff asserts cites to testimony in Tr. 95 as support for the contention that Plaintiff could not reach in front, Plaintiff more specifically testifies that he could not reach in front while bending his arm down from a higher up ice cream truck to serve ice cream to customers.  (Tr. 95).  The ALJ addressed this limitation by specifying that Plaintiff could not reach down without bending. (Tr. 98-99).

In response to the hypothetical that included these right extremity reaching and lifting limitations, the Vocational Expert opined that Plaintiff would still be able to carry out the duties of his previous work as a mail sorter because one could "turn [his or her] body to face any [direction], any reaching could be maintained in front of the body, in other words."   (Tr. 99).   Although the Dictionary of Occupational Titles (DICOT) 209.687-014 states that a mail handler would require frequent reaching, Plaintiff did not assert an inability to reach ahead nor an inability to turn to move in order to reach ahead.

The Court notes that the ALJ's opinion considered all impairments of record and detailed the limitations resulting from the impairments.   The ALJ's determination of Plaintiff's RFC acknowledged Plaintiff's symptoms and

functional impairments that resulted from Plaintiff's right shoulder condition.  (Tr.

15-16, 98-99).  The ALJ noted medical records and Plaintiff's testimony regarding

symptoms of shoulder pain, range of motion, use of medications, daily activities,

and lack of atrophy.  (Tr. 15-16).  Based on the foregoing, the ALJ's determination

of Plaintiffs RFC and ability to do prior work as a mail sorter is supported by

substantial evidence.

## IV.    Recommendation

Therefore, the Court finds that the ALJ made the required specific findings

of fact in determining whether Plaintiff met the criteria for disability, and the

findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3);

*Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552;

*Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503.

Substantial evidence is less than a preponderance of the evidence, but more than a

mere scintilla of evidence. It does not mean a large or significant amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. *Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate.

Accordingly, it is HEREBY RECOMMENDED:

I.      This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.     The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.


Dated: January 5, 2015                          _____s/Gerald B. Cohn_____
                                                         GERALD B. COHN
                                                UNITED STATES MAGISTRATE JUDGE